[Civ. No. 18034.  First Dist., Div. One.  Oct. 13, 1959.]

EDGAR R. LEVIN, Appellant, v. UNION OIL COMPANY (a Corporation) et al., Defendants; ROBERT I. WELCH, Respondent.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Appellant.

Crist, Peters & Donegan for Respondent.

WOOD (Fred B.), J.—The main question is whether or not the allowance of defendant's instruction on unavoidable accident was prejudicially erroneous.

Plaintiff slipped, fell and injured himself at defendant Welch's[1] gas and oil service station. Plaintiff was a regular customer of defendant and they were close friends. Plaintiff was a county supervisor and was planning the appointment of defendant as a member of the county planning commission. They had just taken a trip through plaintiff's supervisorial district to give plaintiff a chance to inspect it and permit defendant "to get acquainted with the job he was going to get." This inspection trip was completed and plaintiff was taking defendant to the latter's home. They stopped at the service station to phone their respective wives. They arrived about 7 p. m. March 25, 1954. It was dark or dusk.

Each observed that the attendant on duty was engaged in cleaning up, with a mop in hand. Plaintiff parked the car and entered defendant's office to use the telephone, a private phone (not a public "pay" phone) available to only a few of defendant's customers including plaintiff.

Upon leaving the office several minutes later plaintiff noticed that the area in front of him looked damp. He thought it was probably water. He noticed that the attendant was working in a different area than when plaintiff arrived. He said he did not exercise any more care than he would have exercised if the surface had been dry. As he walked out of the doorway, he took about two steps when his left foot went out from under him, causing him to fall backwards and land on his left arm.

This was on the concrete, not the asphalt, surfaced portion of the station. Defendant used a solvent for the cleaning of the concrete surface. It is applied directly to the surface by means of a mop which has been dipped into a bucket containing the solvent. It takes five minutes for the solvent to dry if rice hulls are used after the solvent is applied; otherwise, fifteen minutes.

An expert called by plaintiff testified that the cleaning solvent used by defendant would cause a rubber surface to become "very much more slippery." (Plaintiff wore rubber heels.) Defendant called an expert who testified that the coefficient of friction was not reduced by the application of the solvent. He conceded that if the solvent were applied

---

[1]Union Oil Company, Welch's supplier, was originally joined as a defendant but was stipulated out of the case at the beginning of the trial.

to an area containing oil or grease the solvent would possibly put some of the oil into solution which might affect the results of a test.

The operator of another service station in the vicinity testified it was the practice of a number of local stations to block off an area during the cleaning process. Defendant testified that at his station the attendant completes the cleaning of one area before moving on to another area. Each such area is small. The bucket, which is there while a man is mopping an area, apprises the customers that there is solvent in that area.

Plaintiff claims it was error, prejudicial error, to give an unavoidable accident instruction. Defendant contends that unavoidable accident was an issue in the case because of evidence that plaintiff had a history of trouble with his left knee; it "gave way" upon occasion and may have done so upon this occasion. Plaintiff says this evidence went in for a limited purpose, upon cross-examination of his doctor, to test the soundness of his diagnosis of plaintiff's injury, and at best was hearsay. However that may be, there is no direct evidence that plaintiff's knee "gave way" upon this occasion. But, more particularly, evidence of a knee that might "give way" without warning would not, in a case such as this, render proper an unavoidable accident instruction which would be improper without such evidence.

In a negligence action, such as this, "the instruction on unavoidable accident serves no useful purpose." (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 659 [320 P.2d 500].)[2] "The instruction is not only unnecessary, but it is also confusing." (Same, p. 660.) "The giving of a confusing or misleading instruction is, of course, error, and we are of the view that, in the absence of a special situation of the type discussed above,[3] the use of an unavoidable accident instruction should be disapproved. *Parker* v. *Womack*, 37 Cal.2d 116 [230 P.2d 823], is overruled insofar as it is inconsistent with the views expressed herein." (Same, p. 660.)

That leaves for consideration in each case the question whether the error of giving an unavoidable accident instruction is prejudicial. "The determination whether, in a

[2]The trial of this action was held and judgment entered prior to rendition of the decision in the Butigan case.

[3]This is a reference to the statement that there are "situations where it may be necessary to explain the meaning of the words 'unavoidable accident,' for example, where a defendant is charged with a violation of section 602 of the Vehicle Code." (Same, p. 660.)

specific instance, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn.'' (Same, pp. 660-661.)

In this case there is evidence tending to show that defendant, by use of the cleaning solvent, may have made the concrete surface dangerously slick and slippery without appropriate warning to customers and others of that risk. There is also evidence tending to show that plaintiff may not have used due care for his own safety. He noticed that the concrete was damp and used no more care than if it had been dry. If he did have a knee that was likely to ''give way'' a jury might perhaps infer that he should be more watchful than otherwise in the exercise of care for his own safety; i.e., if their attention were not diverted and their minds confused by the concept of ''unavoidable accident,'' erroneously injected into the picture.

In addition, the instruction requested by the defendant and given by the court[4] told the jury that even if such an accident could have been avoided ''by the exercise of *reasonable* [instead of *exceptional,* the word then customarily in use], foresight, skill or caution,'' no one could be held liable. This, obviously, compounded the error and alone made it prejudicial. Defendant argues that this feature (the use of ''reasonable'' instead of ''exceptional'') was cured by an immediately following instruction requested by the plaintiff and given by the court.[5] We are not persuaded. When under

[4]That instruction reads as follows: ''In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of reasonable foresight, skill or caution, still, no one may be held liable for injuries resulting from it. Therefore, if you find from the evidence that the plaintiff was injured in an unavoidable accident as above defined, then your verdict must be in favor of the defendant.''

[5]Plaintiff's instruction read as follows: ''An unavoidable accident is one which occurs despite the exercise of ordinary care by all the participants thereto. If you find from the evidence that the accident could have been avoided by the defendant, individually or through his employees, in the exercise of ordinary care, then as to the defendant said accident was not unavoidable.''

Plaintiff requested that this instruction be given only in case the court should decide to give an instruction on that subject. It is, therefore, not a case of invited error, nor is there any claim made of invited error.

the circumstances of this case, a jury was given, in quick succession, two incongruous concepts of this nature, it would be pure speculation upon our part to undertake to say that they understood and applied the correct one.

We cannot escape the conclusion that the errors under discussion were prejudicial. In view of this conclusion it is unnecessary to consider other questions presented by the parties.

The judgment is reversed.

Bray, P. J., and Tobriner, J., concurred.